**John BURDEN, et al, Plaintiffs,**

v.

**TRUSTEES, UNITED MINE WORKERS OF AMERICA, HEALTH AND RETIREMENT FUND, Defendants.**

**Civ. A. No. 84–0220–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

April 14, 1986.

Louis Dene, Abingdon, Va., for plaintiffs.

Stuart B. Campbell, Jr., Wytheville, Va., William F. Hanrahan, Washington, D.C., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case involves a dispute over whether plaintiffs should receive credit for periods of employment as coal samplers, weighmen and laboratory technicians at Clinchfield Coal Company (Clinchfield) prior to October, 1966 for purposes of computing pension benefits under the United Mine Workers of America 1974 Pension Trust (1974 Pension Trust).

The 1974 Pension Trust is funded by an irrevocable trust established through collective bargaining by the National Bituminous Coal Wage Agreement, under the authority of Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). This Act requires the Trustees to administer the trust for the "sole and exclusive benefit of the employees." Funding is provided by per tonnage contributions to the trust from employers signatory to the Bituminous Coal Wage Agreement.

Plaintiffs brought this action against the Trustees of the UMWA Health and Retirement Funds (hereinafter, the "Trust") seek-

ing a judgment declaring that plaintiffs should be granted pension accrual benefits for all services prior to October, 1966. Jurisdiction of this court derives from § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).[1] *Gordon v. ILWU-PMA Benefit Funds,* 616 F.2d 433 (9th Cir.1980). The Trust has submitted the case for decision on a motion for summary judgment.

### I.

The material facts as established by the pleadings, affidavits and exhibits are basically undisputed.

Plaintiffs were hired by Clinchfield in the 1940's, 1950's and early 1960's to perform work as coal samplers, coal weighmen and laboratory technicians. Prior to August, 1966, or thereabouts, plaintiffs were non-union employees assigned to the mine payroll of Clinchfield where they received a salary or non-union hourly wages. Generally, these pay rates were less than the rates received by UMWA members. Additionally, plaintiffs received benefit coverage under a plan for exempt employees.

In early 1966, plaintiffs contacted the UMWA and requested representation. Union representation was consented to and, following negotiations, a separate local union charter was granted and ultimately Local Union 1470 was formed to represent plaintiffs. Following union representation, there was no change in the plaintiffs' job duties, responsibilities and assignments.

In June, 1979, plaintiff Burden requested that the Trust determine whether plaintiffs would be eligible for pension credit for periods of employment as coal samplers, weighmen and laboratory technicians prior to October, 1966. The Trust determined that because the positions of coal sampler, laboratory technician and weighman were

not considered within the bargaining unit at Clinchfield prior to October, 1966, these positions were not classified jobs. Consequently, the Trust found that plaintiffs were ineligible for benefit accrual credit for employment before October, 1966.

In October, 1983, Local 1470 petitioned the Trust for reconsideration of the 1979 decision. The Trust sustained their earlier decision concluding again that pension credit was unavailable because the positions of coal sampler, weighman and laboratory technician were not within the bargaining unit.[2] Having exhausted their administrative remedies, plaintiffs sought relief in this court.

### II.

The question before this court is whether or not the Trust has correctly interpreted the applicable regulations and whether their decision is consistent with law, or alternatively, whether the decision is not supported by substantial evidence or is arbitrary and capricious. *LeFebre v. Westinghouse Electric Corp.,* 747 F.2d 197, 208 (4th Cir.1984).

The decisive issue in this case is whether the Trust correctly interpreted the UMWA 1974 Pension Plan which sets forth the eligibility requirements for accruing pension credit for periods of employment under the 1974 Pension Trust. The parties agree that eligibility is governed by Article IV A(1) of the 1974 Pension Plan which provides that a participant shall receive benefit accrual credit for period when the participant worked:

> as an employee in a job classified in the then existing bituminous coal wage

---

**1.** Title 29 U.S.C. § 185(a) provides:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect

to the amount in controversy or without regard to the citizenship of the parties.

**2.** The Trust points out that plaintiffs were not within the bargaining unit prior to October, 1966 as evidenced by the fact that they were paid at different rates and received different benefits than those received by union members.

agreement for an employer in the coal industry.[3]

It is undisputed that Clinchfield is an employer in the coal industry. Therefore, the critical question is whether the jobs held by plaintiffs prior to October, 1966 were "jobs classified in the then existing bituminous coal wage agreement."

For years subsequent to 1970, determining whether a participant's employment was a job classified in the "then existing bituminous coal wage agreement" is simple because the Wage Agreement of 1971 and its successor agreements enumerate classified positions. However, determining whether certain employment prior to 1971 was classified is not as easy. To determine whether the positions in question were classified jobs prior to October 1966, the Wage Agreement of 1950 must be consulted.[4]

The Coal Wage Agreement of 1950, in "Exemptions Under This Agreement" provides in pertinent part:

It is the intention of this Agreement to reserve to management and except from this Agreement an adequate force of supervisory employes to effectively conduct the safe and efficient operation of the mines and at the same time, to provide against the abuse of such exemptions by excepting more such employes than are reasonably required for that purpose.

Coal Inspectors and Weigh Bosses at mines where men are paid by the ton, Watchmen, Clerks, Engineering and Technical forces of the operator, working at or from a District or local mine office, are exempt from this agreement.

All other employes working in or about the mines shall be included in this Agreement except essential supervisors in fact such as: Mine Foremen, Assistant Mine Foremen who, in the usual performance of their duties, may make examinations for gas as prescribed by law, and such other supervisors as are in charge of any class of labor inside or outside of the mines and who perform no production work.

This language plainly indicates that all employees, except those specifically exempted, of any employer who is signatory to the Bituminous Coal Wage Agreement are included, and thus classified, if the employee works "in and about the mines...."

It is undisputed that plaintiffs worked for an employer in the coal industry and an employer signatory to the coal wage agreement at all times relevant to this case.[5] Additionally, it is undisputed that the work performed by the plaintiffs as coal samplers, weighmen and laboratory technicians was performed "in and about the mines."

The Trust does not contend that the positions held by the plaintiffs fall within one of the enumerated exemptions of the Wage Agreement.[6] Rather, the Trust contends that the term "classified jobs" contemplates only work within the bargaining unit. In support of this interpretation, the Trust points to a guideline, adopted by the Trust, known as "Question and Answer 147" which provides, *inter alia,* that:

When there is a question as to whether one of these positions was or was not classified at the time and place in question, it is Fund practice to consult the UMWA District and the employers involved for information on whether the job was bargaining unit work.

In support of its contention that Question and Answer 147 is correct and controlling,

3. Plaintiffs also contend that they are entitled to benefits under Article IV B(6) of the 1974 Pension Plan. However, this contention is without merit. Article IV B(6) applies to pension credit for service with a non-signatory employer. It is undisputed that Clinchfield was signatory at all times relevant to the case at bar.

4. The Wage Agreement of 1950 was amended several times prior to October, 1966 but the provisions relevant to this case remained unchanged.

5. The record shows that Clinchfield has been signatory to the relevant coal wage agreements continuously since 1945.

6. Indeed, such a contention would be inconsistent with the position of the Trust. The Trust asserts that the plaintiffs' jobs became classified after October, 1966 even though their job responsibilities and duties remained unchanged while the enumerated exemptions also remained unchanged.

the Trust points to a letter dated March 17, 1969 from Mr. Carson Hibbitts, President of District 28, UMWA. In this letter, the Trust was advised that:

> all coal samplers, laboratory technicians and weighmen were taken into the Union at the same time and received membership in September, 1966. Those types of labor have been considered classified since that time.[7] [Exhibit F at 10.]

The Trust relies on this court's decision in *Mullins v. Mullins*, 537 F.Supp. 840 (W.D.Va.1982), *aff'd mem.*, 701 F.2d 166 (4th Cir.1983) to support its assertion that its decision is consistent with the established law. The Trust argues that *Mullins* requires that a job be within the bargaining unit before it can be classified. Because this court found that Mullins was a dues-paying member of the UMWA and that Mullins performed classified work, the Trust contends that *Mullins* implicitly requires that work be within the bargaining unit in order to be classified. *See* 537 F.Supp. at 843–44.

This contention is without merit. *Mullins* does not require that a job be within the bargaining unit in order to be a classified job. All that is required of a classified job under *Mullins* is:

> that the applicant be employed by an employer in the coal industry, performing work in or about the mines, which is not explicitly excluded under the applicable Coal Wage Agreement as non-classified work. 537 F.Supp. at 846.

Accordingly, the Trust's decision, requiring that plaintiffs have been part of the bargaining unit before receiving credit for service in a classified job, is contrary to the established law and is therefore arbitrary and capricious.

■ Requiring that a job be within the bargaining unit in order to be classified is tantamount to making union membership a prerequisite to classified work. The Trust has attempted to do indirectly what may not be done directly. It is commonly understood that eligibility for benefits may not be conditioned upon UMWA membership. *See Champion v. Davis*, 459 F.Supp. 305, 307, 308, (N.D.Ala.1978); *Warren v. Davis*, 95 L.R.R.M. 2025, 2030, (E.D.Okla. 1977); *Browning v. UMWA Welfare and Retirement Fund of 1950*, 92 L.R.R.M. 3293, 3294, (D.D.C.1976).

Furthermore, this court has held in *Boardwine v. Huge*, 497 F.Supp. 607 (1980) that prior to April 1, 1971 it was not necessary for a employee to work for a signatory employer to be eligible for classified service. Thus, under *Boardwine* the only question involved in determining classified service prior to 1971 is whether or not it fits the definition of classified employment in the 1950 contract. This is also in accord with the Blankenship Agreement defining classified work from January 1, 1937 to April 1, 1971.

■ The court finds that the Trust's interpretation of the classified work provision of the Coal Wage Agreement of 1950 is arbitrary and capricious under the facts of this case. Plaintiffs' work prior to October, 1966 met all the requirements for classified work. Accordingly, plaintiffs are entitled to pension benefit credit for employment prior to October, 1966. The court will this day enter an Order denying defendants' motion for summary judgment and granting summary judgment in favor of plaintiffs.

The only remaining issues in this case are those of costs and attorney fees. The court will enter an Order awarding costs to plaintiffs. Because plaintiffs have requested attorney fees in their complaint, the court will enter an Order allowing plaintiffs to file a formal petition for attorney fees and permitting defendants to respond.

---

**7.** The court notes that there is other evidence of record indicating that the UMWA understood that plaintiffs' work prior to October 1966 was classified work. The supervisors of the UMWA Welfare and Retirement Office were of the opinion that plaintiffs were performing classified work prior to October, 1966 and accordingly would be eligible for pension benefit credit for that period. *See* Exhibit F at 7.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.